UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO.   8:14-cr-164-SDM-AAS
                                                       8:19-cv-818-SDM-AAS

TERRI L. SCHNEIDER

_____

### ORDER

Terri L. Schneider moves under 28 U.S.C. § 2255 to vacate her conviction and sentence for health care fraud and related charges, for which she is imprisoned for 87 months. Schneider claims she received ineffective assistance of counsel, but she is entitled to no relief because her claims lack merit. Her claim of prosecutorial misconduct is procedurally defaulted.

### I.  BACKGROUND

A 41-count superseding indictment charged Schneider and two others with Medicare fraud involving the use of appropriated physician Medicare identification numbers to bill for services not rendered, among other charges. After a ten-day jury trial, Schneider was convicted of conspiracy to commit health care fraud, conspiracy to commit money laundering, money laundering, aggravated identity theft, and 18 counts of health care fraud. Varying downward from the sentencing guidelines range, the district court sentenced Schneider to 94 months.

On direct appeal Schneider challenged the sufficiency of the evidence as to

three health care fraud counts.  Also, she argued that the district court abused its discretion by denying her motion for new trial and committed plain error by failing to correct the prosecutor's rebuttal.  The appellate court found merit only with her first claim and remanded the case for resentencing.  *United States v. Lovelace, et al.*, 726 F. App'x 770 (11th Cir. 2018).  At resentencing the district court again varied downward and sentenced Schneider to 87 months.  Schneider did not appeal again.

Schneider now moves to vacate her convictions and sentence claiming ineffective assistance of counsel and prosecutorial misconduct.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

"[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).  As *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains, *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Schneider must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691–92. To meet this burden, Schneider must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic

choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Schneider cannot meet her burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992); *accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)); s*ee also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

### III.   INEFFECTIVE ASSISTANCE OF COUNSEL

In Grounds One through Three, Schneider lists twenty-seven instances in which she claims her retained counsel, Michael LaFay, rendered constitutionally ineffective assistance. (Civ. Doc. 1 at 13) LaFay prepared a sworn declaration disputing her claims. (Civ. Doc. 8-3)

### Counsel's experience

Schneider claims that counsel lacked sufficient experience defending Medicare fraud charges, misunderstood Medicare laws and billing, and admitted his own ineffectiveness. (Civ. Doc. 1 at 15) She complains that counsel "was not [her] choice of attorneys" but that, after her previous counsel suffered a debilitating medical condition, she "was pressured to continue with Mr. LaFay under the threat of losing [her] $75,000.00 deposit." She contends that she would have requested to postpone the trial had she known counsel lacked experience. She claims that counsel admitted to her, "I don't know enough about this billing stuff to ask a question."

Counsel admits that he "had never tried a Medicare fraud case" and lacked expertise in Medicare billing. (Civ. Doc. 8-3 at 1, 4) However, he is board certified in Criminal Trial Practice by the Florida Bar and has 31 years' experience. He served as the lead attorney in approximately 300 jury trials and defended charges of securities fraud, embezzlement, worker's compensation fraud, tax fraud, and mortgage fraud. He represents that he developed a "working knowledge" of Medicare billing.

Schneider's bare claims that counsel lacked experience defending Medicare fraud charges, misunderstood Medicare laws and billing, and admitted that he was unable to formulate questions about billing are insufficient to demonstrate constitutionally deficient performance. Counsel's lack of experience defending Medicare fraud claims alone is insufficient to rebut the presumption that his performance fell within the wide range of reasonable professional assistance. *United*

*States v. Chronic*, 466 U.S. 648, 663 (1984) (concluding that lack of experience alone was insufficient to presume constitutionally-deficient performance). Similarly, Schneider's claim that she was pressured to continue with counsel and would have requested a continuance is self-serving speculation. A defendant is not entitled to relief when her claims are merely "conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991).

**Counsel's pre-trial performance**

Schneider claims that counsel failed to advise her of her right to request a bench trial. (Civ. Doc. 1 at 16) Counsel explains that he did not do so because he believed that neither the government nor her co-defendant would agree to a bench trial. (Civ. Doc. 8-3 at 6)

Schneider neglects to show that counsel's decision not to advise her of her right to request a bench trial prejudiced her. *See United States v. Hunter*, No. 3:08cr79, 2018 WL 4113368, at *10 (N.D. Fla. June 13, 2018) ("Defendant has not demonstrated that had she chosen a bench trial, the outcome would have been different."). Her assertion that she "repeatedly rejected" counsel's "insistence" that she plead guilty contradicts her vague suggestion that she would have proceeded to a bench trial had counsel advised her of that option. (Civ. Doc. 1 at 32)

Schneider claims that counsel failed both to prepare her for trial and to provide her with discovery material. (Civ. Doc. 1 at 17) She claims that counsel "spent less than 10 minutes" preparing her for trial. She claims that she received five

CDs of discovery material from her prior counsel but never received the remaining seven to eight additional CDs of discovery material.  Counsel responds that he devoted "hours upon hours" to preparing Schneider for trial during "numerous" meetings with her at his offices.  (Civ. Doc. 8-3 at 6)

Schneider does not refute counsel's sworn statements that he met with her "numerous" times and devoted "hours upon hours" to trial preparation.  And, she fails to show how earlier access to discovery would have altered the outcome of the trial.  Her vague and self-serving claim is insufficient to demonstrate deficient performance or prejudice. *Tejada*, 941 F.2d at 1559; *Saunders v. United States*, 278 F. App'x 976, 979 (11th Cir. 2008) (explaining that a defendant must allege "reasonably specific, non-conclusory facts . . . to undermine confidence in the outcome").

**Counsel's witness preparation and interrogation**

Schneider claims counsel failed to identify witnesses, call an expert witness, and conduct effective direct and cross-examination of witnesses.  Specifically, Schneider claims that during direct examination of Theresa Olson, a clerical employee of her co-defendant, counsel "did a very ineffective job on bridging the link between [her co-defendant]'s suspect criminal activity and his company, not [Schneider's]."  (Civ. Doc. 1 at 30)  Counsel responds that Ms. Olson testified favorably that Schneider's co-defendant forged physicians' signatures on Medicare documents. (Civ. Doc. 8-3 at 3; Crim. Doc. 512 at 86–87)  To support that testimony, counsel called Schneider's sister, Ms. Rocki Adkins, who worked for Schneider.  Ms. Adkins testified that a representative of her co-defendant would

collect the documents.  (Crim. Doc. 512 at 109)  Also, counsel introduced the documents that bore only Schneider's signature "thereby circumstantially showing that the forgeries were committed after she had signed."

Schneider vaguely claims that counsel waited until after the trial began to telephone an unnamed witness who worked for her.  (Civ. Doc. 1 at 18)  Schneider admits that she has "no idea what [counsel] even planned to ask this witness," but "to [her] knowledge [the witness] would have had only positive things to say." Counsel does not respond directly to this unsubstantiated claim.

Schneider claims counsel failed to call Dr. Carlos Romero, who "would have given [her] a glowing review," to testify.  (Civ. Doc. 1 at 18)  She claims, without any explanation, that Dr. Romero's testimony would have changed the outcome of the trial.  Counsel responds that he chose not to call Dr. Romero to testify because he did not qualify as a character witness and his testimony lacked relevance.  (Civ. Doc. 8-3 at 8)

Schneider claims counsel conducted ineffective cross-examination of the prosecution's expert witness, Mr. Stephen Quindoza.  (Civ. Doc. 1 at 23–26) Schneider complains that counsel refused both to ask whether Quindoza removed exculpatory evidence from the Claims Data Summary that he authored and refused to inquire about errors in the document.  Schneider asserts that counsel could have shown that the document omitted exculpatory information.  Counsel responds that he did not question Mr. Quindoza on these issues because he believed they were

tangential.  (Civ. Doc. 8-3 at 4, 6)  He explains that the proposed questioning was not relevant to the government's theory of the case.

Schneider claims that she had to demand that counsel ask Gregory Silvestri, an ultrasound technician, "were you ever told not to contact Dr. Schneider," and that counsel "seemed shocked" when Mr. Silvestri testified favorably, "yes," because counsel understood neither the evidence nor the question.  (Civ. Doc. 1 at 30)  Also, Schneider claims counsel refused to question Carrie Woodcock, a billing specialist, about texts that showed Schneider's co-defendant conspired to hide information from her.  (Civ. Doc. 1 at 35)  Counsel responds that after questioning each witness he asked Schneider if she wanted him to ask any other questions but "to [his] recollection, she never had one question to suggest."  (Civ. Doc. 8-3 at 3)

Schneider faults counsel for failing to ask doctors Thomas Digeronimo and Praveen Rohatgi "simple" questions that would have rebutted the government's theory that Schneider's company stole the doctors' billing numbers.[1]  (Civ. Doc. 1 at 33–34)  Counsel responds that the government did not pursue this theory at trial. (Civ. Doc. 8-3 at 5)  And her co-defendant cross-examined the doctors on this theory.

Schneider faults counsel for not hiring an expert witness although she neglects to describe what exculpatory testimony an expert would have provided.  Counsel responds that "Schneider was directly boasting in her texts/emails about forging

---

[1] Schneider claims (Civ. Doc. 1 at 34):

> All Mr. LaFay had to do was simply ask, "Did you (the Doctor) bill
> Medicare for the services rendered?" They would have said, "No."
> The next question, "Why? Isn't it against Medicare rules to render
> services and not bill?" The answer would have been, "the company I
> rendered services for was responsible for billing."

these claims" and "was texting about cash payments to co-conspirators in Miami."

(Civ. Doc. 8-3 at 5)  When counsel asked Schneider to explain this evidence, she

responded, "I know it looks bad, but I didn't do it."  According to counsel, her "only

defense to the overwhelming evidence in the text/email exchanges . . . was that she

had not seen the emails in question and that [her co-defendant] for purposes

unknown had created the entire email exchange."  Counsel represents that he made

"considerable efforts in hiring a computer forensic expert and obtaining the hard data

behind the emails," but "the expert verified the government's position."

Schneider fails to overcome the presumption that counsel's decisions neither to

call specific witnesses nor to obtain an expert witness were anything other than trial

strategy.  Counsel's failure to call particular witnesses that the defendant thinks would

be helpful does not constitute ineffective assistance of counsel.  *Hardwick v. Crosby*, 320

F.3d 1127, 1161 (11th Cir. 2003).  "Which witnesses, if any, to call, and when to call

them, is the epitome of a strategic decision, and it is one that [the court] will seldom,

if ever, second guess."  *Conklin v. Schofield*, 366 F.3d 1191, 1204 (11th Cir. 2004)

(quotations omitted).  Schneider fails to show that counsel's decision not to obtain an

expert witness was "so patently unreasonable . . . that no competent attorney would

have chosen this strategy."  *Dorsey v. Chapman*, 262 F.3d 1181, 1186 (11th Cir. 2001).

Similarly, his decisions to ask or omit particular questions are "accorded a strong

presumption of reasonableness.'"  *Mills v. Singletary*, 63 F.3d 999, 1021 (11th Cir.

1995). "Numerous choices affecting conduct of the trial do not require client consent,

including the objections to make, the witnesses to call, and the arguments to advance."

*McCoy v. Louisiana*, 138 S. Ct. 1500, 1509 (2018) (citations and alterations omitted).

**Counsel's trial strategy**

Schneider claims that counsel ignored exculpatory evidence, offered no defense, failed to investigate, refused to listen to her, and instead "relied on the Government's version of the evidence." (Civ. Doc. 1 at 19)  Specifically, she claims that counsel failed to introduce a report prepared by the Center for Medicare Services that confirms patients were treated in Miami.  This report, she argues, conflicts with the government's theory that Medicare did not know that patients were treated in Miami.  Counsel explains that he strategically decided not to introduce the report because it is "extremely inculpatory." (Civ. Doc. 8-3 at 7)  The report states that Schneider "was unable to provide answers to basic questions on the business operations of Cornerstone Health Specialists." (Civ. Doc. 1-1 at 5)

Schneider claims that counsel failed to distinguish her co-defendant from her and allowed "information to be easily confused and overlooked." (Civ. Doc. 1 at 32)  Counsel responds that, to avoid such prejudice, he attempted to distinguish Schneider's role in the scheme from her co-defendant's role. (Civ. Doc. 8-3 at 2)  Counsel's cross-examination of Agent Isaac Bledsoe focused on establishing that Schneider lacked a connection to her co-defendant's company, Summit Health.[2]  During his cross-examination of Thomas Cook, chief executive officer of MedXlance, an electronic medical records software company, counsel established

---

[2] Agent Bledsoe testified on cross-examination that Schneider's name was absent from Summit Health's corporate documents, bank accounts, Medicare documents, and post office box application where the company received Medicare payments. (Crim. Doc. 526 at 7–8)

that Schneider lacked access to MedXlance billing systems while her co-defendant

did have such access.  (Crim. Doc. 512 at 35–36)  At sentencing counsel

unsuccessfully objected to assessing any "responsibility for Summit and anything

having to with Summit on Ms. Schneider."  (Crim. Doc. 529 at 5–6)

Schneider claims that counsel failed to clarify the distinction between the

phrases "using to bill" and "including on bills" when referencing Medicare provider

numbers.  (Civ. Doc. 1 at 33)  She argues that counsel's failure to identify the

distinction misled the jury to believe that her company submitted Medicare claims

using physicians' numbers.  Counsel responds that Schneider "would continually

ignore the true issues in her case[, . . .] would divert to 'straw' issues that made no

difference (the place of service, the billing vs. 'using to bill')," and offered no valid

explanation for the overwhelming evidence of her guilt.[3]  (Civ. Doc. 8-3 at 5)

Schneider claims counsel failed to use an exculpatory forensic accounting

report that explained all business costs including payroll and equipment.  (Civ. Doc.

1 at 35)  She argues the report showed the "very limited" profit she earned.  Counsel

---

[3] Counsel explains that the "central issues for the defense" were the following (Civ. Doc. 8-3 at –5):

> a) That four to five doctors were testifying that their names were forged on Reassignment of Benefit forms signed by Ms. Schneider certifying that the information was true and correct; b) that Ms. Schneider has sent writings to Medicare that she was going to obtain one or more of these very signatures; c) that these doctors were going to testify that they did not do the 'reads' for the testing and that they did not consent to the use of their NPI numbers for Cornerstone/Coastal to use for referral billings; d) that deceased persons were on the billings; d) that claims were forged and sent in for payment; and e) that Ms. Schneider was directly boasting in her texts/emails about forging these same claims and evidence was introduced showing that she had practiced the forgeries; and that f) Ms. Schneider was texting about cash payments to co-conspirators in Miami.

explains that he introduced evidence of her legitimate expenses, including loans for equipment, through the testimony of Ms. Adkins.  (Civ. Doc. 8-3 at 3)  Ms. Adkins testified that she paid monthly bills for operating expenses including phone, internet, and equipment loans.  (Crim. Doc. 512 at 106–08)

Each of Schneider's claims concerning counsel's trial strategy amounts to her dissatisfaction with counsel's strategic decisions.  She fails to overcome the strong presumption that counsel's strategic decisions are "virtually unchallengeable." *Strickland*, 466 U.S. at 690–91.  She fails to show that "no competent counsel would have taken the action that counsel did take."  *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted).  "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness." *Chandler*, 218 F.3d at 1314; *Fugate v. Head*, 261 F.3d 1206, 1217 (11th Cir. 2001) (recognizing that "there is no absolute duty to investigate particular facts or a certain line of defense").

### Counsel's use of technology

Schneider claims counsel was unable to operate courtroom technology which disadvantaged her because counsel's presentation was "nearly impossible to follow." (Civ. Doc. 1 at 36–37)  She complains that counsel's computer malfunctioned preventing him from adequately preparing closing arguments and that counsel was unable to operate the ELMO "causing his presenting of evidence to be sometimes incoherent & difficult to follow."  These complaints are merely Schneider's opinion and fail to show that counsel's performance prejudiced her defense.

**Counsel's request for payment**

Schneider claims that counsel "demanded $1,000.00 to continue" his representation during the trial.  (Civ. Doc. 1 at 37)  Despite having very little money, she paid counsel the next day because she was "terrified that if [she] didn't pay he would stop even trying to do anything to help [her]."  Counsel explains that he asked her to make payment because she owed an outstanding debt and because he incurred expenses in preparing for trial.  (Civ. Doc. 8-3 at 2)  "Nonpayment of legal fees does not establish a conflict of interest of the type which would establish ineffective assistance; lawyers are required to provide zealous advocacy regardless of a criminal defendant's failure to pay legal fees."  *Frank v. United States*, No. 2012 WL 13072044, at *17 (S.D. Fla. Jan. 23, 2012) (quotation omitted).  Schneider does not allege that an outstanding debt adversely impacted counsel's performance.  Therefore, she fails to show that an actual conflict of interest existed that adversely affected the adequacy of counsel's representation.  *See Strickland*, 466 U.S. at 692.

**Counsel's post-trial performance**

Schneider erroneously claims counsel neglected to file post-trial motions when newly-discovered evidence showed errors in the government's Claims Data Summary.  (Civ. Doc. 1 at 21–23)  She contends that a private investigator, hired by her co-defendant, interviewed patients who reported that they received medical services in Miami and were shocked to discover that government agents had "twisted" their words.  According to Schneider, the investigator discovered that eight patients who were listed as deceased in the Claims Data Summary were in fact alive.

She argues that if counsel had investigated thoroughly the Claims Data Summary he would have discovered discrepancies in the evidence.

Counsel explains, and the record confirms, that the information obtained by the private investigator was not newly discovered evidence but rather another attempt to dispute the sufficiency of the evidence. (Civ. Doc. 8-3 at 7–8)  Schneider's co-defendant filed a motion for new trial, which Schnedier adopted, relying on the private investigator's report.  In denying the motion without an evidentiary hearing, the district court reasoned (Crim. Doc. 560 at 1–2):

> Featuring a characteristic diversion (this time in the form of a report by "The Diaz Group" of an investigation conducted after the convictions), the defendants' motion again offers for inspection a set of hypotheses—some refuted, some trivial, and some wholly irrelevant—that neither individually nor collectively alter the force of the evidence, properly characterized by the United States as "direct and overwhelming," that resulted in the defendants' convictions.

Schneider's claim that counsel neglected to file a post-trial motion based on the private investigator's report fails because counsel in fact adopted her co-defendant's motion for new trial.  Counsel was not ineffective in adopting the meritless motion for new trial. *Ward v. Hall*, 592 F.3d 1144, 1164 (11th Cir. 2010) ("The fact that a particular defense was unsuccessful does not prove ineffective assistance of counsel").

### Counsel's performance at sentencing

Schneider erroneously claims that counsel failed to object to the prosecutor's inaccurate and misleading statement at sentencing that "when one business would get shut down another business was opened." (Civ. Doc. 1 at 31–32)  Schneider may

intend to refer to the following statement by the prosecutor in support of a sophisticated-means sentencing enhancement: "Cornerstone, Summit, and Coastal, and the sophistication is demonstrated by how long they were able to keep this going.  When Cornerstone was put on prepayment review, Summit was ready to go.  When Summit was put on prepayment review, Coastal was ready to go." (Crim. Doc. 529 at 21)  Schneider's claim fails because counsel objected to the sophisticated-means enhancement, albeit unsuccessfully.  (*Id*. at 21–27; Crim. Doc. 411 at ¶ 59)

Schneider claims counsel admitted her guilt at sentencing when he stated, "I think she started out good but just went wrong." (Civ. Doc. 1 at 32)  Schneider may intend to refer to counsel's statement in support of a downward variance that "it's clear that she started with the best of intentions" and "was sort of carried along in this tide." (Crim. Doc. 529 at 45)  Schneider cannot demonstrate that counsel's statement prejudiced her because the district court granted counsel's request for a downward variance.

Schneider claims counsel confused federal and state law in a post-trial motion for release pending appeal when he once cited an inapplicable Florida Rule of Criminal Procedure. (Civ. Doc. 1 at 15; Crim. Doc. 427 at 1)  At sentencing the district court identified the clerical error, and counsel corrected it.  (Crim. Doc. 529 at 60)  A singular clerical error does not constitute constitutionally-deficient performance, and the error did not prejudice Schneider.  In fact, the district court confirmed that, despite the error, it understood counsel's argument "on the first reading."

## IV.   PROSECUTORIAL MISCONDUCT

In Ground Four Schneider claims that the government knowingly presented false testimony and removed exculpatory information from evidence, thereby "[c]asting a light of deception and shady practice on [her] business." (Civ. Doc. 1 at 26)  Specifically, she claims that the government purposely removed the Service Facility Location from the Claim Data Summary that it presented to the Grand Jury in order to show that she "had purposely avoided telling Medicare of [her] location as if [she] was trying to hide that information from Medicare."

"[A] collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152,164–65 (1982).  "Once the defendant's chance to appeal has been waived or exhausted," courts "are entitled to presume that [the defendant] stands fairly and finally convicted." *Id.*  As a result, claims that previously were available yet were not raised in a prior proceeding are procedurally defaulted and ordinarily are barred from consideration on collateral review.  *Bousley v. United States*, 523 U.S. 614, 622–24 (1998).

Schneider did not raise a claim of prosecutorial misconduct on direct appeal. Consequently, this claim is procedurally defaulted.  *Wainwright v. Sykes*, 433 U.S. 72, 85–86 (1977) (claim defaulted when no contemporaneous objection was lodged at trial); *Murray v. Carrier*, 477 U.S. 478, 490–92 (1986) (claim not raised on direct appeal is procedurally defaulted).

The exceptions to the procedural default rule are: "(1) for cause and prejudice, or (2) for a miscarriage of justice, or actual innocence." *McCay v. United States*,

657 F.3d 1190, 1196 (11th Cir. 2011).  To establish cause and prejudice Schneider must show (1) that "some objective factor external to the defense" impeded his efforts to raise the issue earlier, *Coleman v. Thompson*, 501 U.S. 722, 753 (1991), and (2) that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error," *Frady*, 456 U.S. at 170.

### 1.    Cause

As cause for excusing her procedural default, Schneider claims counsel neglected to investigate "actual" claims and failed to "understand the difference in Service Facility Location and Place of Service," which "allowed the Prosecutor to present a very negative picture of [her] business." (Civ. Doc. 1 at 27)  However, to excuse her procedural default, Schneider's "claim of ineffective assistance must have merit."  *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000).

Schneider's assertion that counsel's performance was constitutionally deficient as cause to excuse her procedural default lacks merit.  She fails to show that counsel ignored important issues or evidence.  Rather, the claims she now raises were litigated exhaustively, before, during, and after trial.  The district court emphatically rejected these claims in its order denying Schneider's motion for new trial.

### 2.    Prejudice

Even if Schneider could establish counsel's performance was constitutionally deficient, she would have to demonstrate actual prejudice from the alleged error.  *See Frady*, 456 U.S. at 170.  To establish actual prejudice, she "must shoulder the burden of showing, not merely that the errors . . . created a possibility of prejudice, but that

they worked to [her] actual and substantial disadvantage, infecting [her] entire trial with error of constitutional dimensions." *Id.* Schneider cannot demonstrate prejudice because her convictions were the result of the overwhelming evidence at trial—not alleged prosecutorial misconduct or counsel's ineffectiveness.

### 3. Actual Innocence

Because Schneider demonstrates neither cause nor prejudice, her procedural default can be excused only if she demonstrates her actual innocence. *See Bousley*, 523 U.S. at 622–23. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." To show actual innocence of the crime of conviction, a movant "must show that it is more likely than not that no reasonable juror would have found [her] guilty beyond a reasonable doubt" in light of the new evidence of innocence. *Schlup*, 513 U.S. at 327. The "prototypical example of 'actual innocence' in a colloquial sense is the case where the government has convicted the wrong person of the crime." *Sawyer v. Whitely*, 505 U.S. 333, 349 (1992).

Schneider does not contend that she is factually innocent of her offenses of conviction. Consequently, she is not excused from her procedural default of Ground Four.

Schneider's motion under Section 2255 to vacate, set aside, or correct her sentence is **DENIED**. The clerk is directed to enter a judgment against Schneider, close this case, and enter a copy of this order in 8:14-cr-164-SDM-AAS.

## CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL IN FORMA PAUPERIS

Schneider is not entitled to a certificate of appealability ("COA"). A prisoner moving under Section 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Schneider must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues she seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because she fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Schneider is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

A certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Schneider must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on September 19th, 2022.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE